Good morning. May it please the Court. My name is Jesse Linden. I'm here on behalf of the Appellant Thomas Cattell in this matter. I'd like to reserve three minutes for rebuttal. Your Honors, there's been an extensive briefing on this matter and there's a lot of issues in this matter. I just want to touch on some of the most, what I think are the most significant issues for the Court. The panel should really grant a new trial to Mr. Cattell as to either both, one or both of the major abuses of discretion, which is the motion to continue and the motion for a new trial, for several reasons. The headline is that with regard to the motion to continue, if it is not an abuse of discretion to deny a short continuance to let new trial counsel for an autistic man get up to speed in a complex bankruptcy trial after his previous counsel had to withdraw due to malpractice, it would be very unclear to judges in this circuit what an abuse of discretion looks like. Can you run me through the timeline? At what point did his prior counsel retire, withdraw? I'm sorry, Your Honor. I could not hear you. I'm looking for the timeline. So at what month did his prior counsel withdraw? The prior counsel withdrew like about three months or so before the trial date. Okay. And the trial date was? It was, oh, I don't have it exactly in front of me. It's in December, in early December. And so it's in July, very early July, July, August, September. Yeah. When the attorney had to withdraw. So he withdrew in July. And was the trial date set at that point? The trial date was set at that point, Your Honor. Okay. So at that point he had six months. It was four months. So I've got the trial date wrong. I know the court said four months for sure in its analysis. So if I'm, August, September, October, November is correct. But he knew what the deadline was at that point. I'm sorry, Your Honor. He knew what the deadline was at that point. He knew when his trial date was. He didn't know what his trial date was at that point. And again, he tried immediately to try to find new counsel. I think what is, why the court's ruling is implausible and illogical is that you have to consider the, in terms of diligence, if that's what Your Honor is getting to, in terms of diligence, you have to not, you have to look at the context of the person who you're asking to do the diligence. In this particular instance, you're talking about this, an autistic man during COVID trying to find a bankruptcy adversary proceeding trial attorney in Eugene, Oregon. That, the market for that is very, very difficult. And he did not sit around, Your Honor. He immediately went and tried to find counsel. It's very difficult. The trial was coming up pretty quick. He found somebody, Mr. Corazon, to kind of bridge the gap a little bit while he continued to look. He immediately got somebody to step in. So at least on diligence, Your Honor, I think that's what's going on. Is there something in the record? I know the record says he reached out to four attorneys and they ultimately all said no. I couldn't find it. Is there anything in the record that shows the timing? You know, he sought out someone in September or October. Is there anything in the record that shows the timing? There's nothing specific in the record where, because it, where the, where Mr. Cattell said exactly which dates he contacted the attorney. But the record does show that he contacted, have some specifics about contacting attorneys. And what they told him was basically, oh, you got 500, 600 docket entries and you want me to go to trial in, on a bankruptcy matter in a couple of months? No, I'm too busy. Um, so I think Your Honor, what we have here in this case, I think this one, uh, what I would say is that ultimately this case arises in a pattern. I think what's the most important is that the judge essentially abused his discretion, made clearly erroneous rulings when it disregarded the evidence on Mr. Cattell's autism, despite medical expertise. I know you're brief, repeatedly mentions that, but I mean there, unless you're severely autistic and maybe you're non-verbal, there are many people who are autistic and functional and it seems like Mr. Cattell seems to have done, had a job, saved money, bought a property. So I, I don't think that's really relevant. But can you focus more on here, the prejudice? What is the actual prejudice? Can you cite to certain types of evidence or certain things that, uh, wasn't introduced or didn't go well because he had to, he was pro se in a, in a bankruptcy case? Yes, Your Honor. Um, what I would like to say first, at least on that issue of, um, on, uh, the issue of prejudice is, is that, uh, the case law does not require, I'll just say, uh, evidence of specific prejudice. So, uh, but I can give some in any case. For example, the cases that underlie Mitchell, which is the case that deals with this issue of prejudice, the cases that underlie those, um, for example, uh, I think a good example is, uh, United States v. Clevenger, 733 FQD 1356, um, and also, uh, Long, which is, uh, 706 FQD F2nd 1044. Underneath those cases, upon everything that Mitchell has built, is a case like Gideon v. Wainwright, 372 U.S. 335. Those are criminal cases, counsel. Do you have any, do you have any civil cases? Those are all criminal cases, Your Honor, but the, but the fundamental case that, uh, goes off for prejudice under the standard we have in the circuit is in fact itself a criminal case, Mitchell. And I understand there are different set of, of considerations. Um, we have, you have a right to counsel in a criminal case. You don't have a right to counsel in a civil case. I totally understand that, Your Honor. You're totally correct, um, that, that what is happening in the case law in the circuit with Mitchell, because it is, in fact, being applied to civil cases. Um, the, the analysis isn't exactly, isn't exactly the same, but nonetheless, that's how it's applied. For example, in Gideon, uh, a failure to, um, it was automatic new I understand that that's in a criminal context, but there's no other case law. That doesn't really, I don't really think that helps you here very much. I really would like you to go ahead and give us the specifics to Judge Lee's question as to what, what is the prejudice that your client suffered in this case. Okay. Assuming that, uh, Mr. Cattell needs to prove some specific prejudice in, in this case, um, not having an attorney in itself seems like it's, it's evidently, uh, prejudice, but as to the specifics, for example, Mr. Cattell was not able to call witnesses that he needed to call key witnesses, expert witnesses, as to, as to value. Um, he wasn't able to do a pre-trial. I think that the, the, the inability to call the expert that he wanted had to do with his former lawyer not properly disclosing the expert. I'm, I'm sorry, Your Honor, I heard the second part. My understanding was that he wasn't allowed to present the expert he wanted to because his former lawyer failed to disclose the expert. Um, that's not all though, Your Honor. That is correct that his former lawyer did fail to disclose, disclose one specific expert, I suppose, but, uh, Mr. Cattell, um, didn't have any idea how to call even, for example, uh, the opposing parties as his witness. Uh, he didn't know how to, the case shows clearly that he didn't know how to. So then, so then let's get more specific about that. So he wasn't, he didn't understand how to call the opposing party. That's fair. He's a pro se litigant. But what we do know from the record is that he presented a witness list. So we figured that out. She wasn't on it. And we also know that, I mean, it seems fairly clear to me looking at the transcript or looking at the record that, um, the judge was fairly patient in terms of making sure that your client had the chance to say whatever he wanted to say. So I come back to Judge Lee's question. What specific evidence facts didn't get in the record because your client was pro se? Well, Your Honor, uh, again, specifically, he wasn't able to get evidence, for example, of, uh, because he didn't know how to do a pretrial statement. As an example, he wasn't able to get in most all of his claims as far as the avoidance powers that happened to him. He wasn't able to get in the evidence, uh, for example, of anything that he could have gotten from those witnesses because he didn't know how to put the opposing party on his witness list. He didn't, uh, but he was able to question the opposing party. I thought the argument was he didn't get to cross her, no, he didn't get to direct her because he couldn't figure out how to get her as a witness in his own case, but he did get to cross-examine her. Yes, Your Honor, he got to cross-examine her in the manner that a pro se knows how to cross-examine. That comes back to he's just pro se and I think you're going to have to set that aside because I'm not sure the law just says you automatically prove prejudice because you have to proceed without a lawyer. So you set that aside and we come back to what are the facts that didn't get in the record? Well, again, Your Honor, I think one of the key facts for him again was that he was, okay, so facts that he couldn't get in the record. I mean he wasn't able to get any of the facts on the record, for example, um, with regard to, um, with regard to the, uh, theft from him, the way he characterized it. He just was not able, I guess what the best way to say it is, he just was not able to articulate the facts that he needed to get in. I wouldn't say that to the extent that he got facts in, Your Honor, he was simply dumping documents on the court without the ability to actually explain or pull out the particular facts in the case. And that includes, again, on value, that was very key and it wasn't just because his, uh, attorney didn't get that expert on the witness list. I think what's also important is that, to highlight, is that the judge bending over backwards or giving more time or wide latitude, that doesn't cure the, that doesn't cure the prejudice because to say that the, um, that Mr. Gattell had ample time to say whatever he wanted to say doesn't, isn't really helpful because it's not what a pro se wants to say that matters. A pro se can say whatever they want, but what's important is what they need to say. And that's what they're not able to do without an attorney. Your argument, if we, uh, gets us very, very close, um, to the criminal position that you're, that you are entitled to a lawyer and that the, and the court cannot proceed if your client doesn't have a lawyer. And I, I don't know that there's any, any basis for that in our law, is there? Well, again, Your Honor, I do believe there is a basis for that. But your, your standard for abuse of discretion all comes back to the fact that he, he was not as effective as a lawyer would have been. And if that's the position, if that's the standard for abuse of discretion, then a district court is going to have to delay the start of any trial in order to accommodate somebody who has not been able to find, to find counsel in a timely fashion. Your Honor, you said that there was no case law in this. I think there is. I think after Mitchell, there's a split, okay? Mitchell doesn't say what type of evidence you need. There are two classes of cases, Your Honor. There's a class of case, which I'll call, um, the, I have an attorney case, like Mitchell was an I have an attorney case, and several others that we cited, um, are we have an attorney cases. But there's an entirely other set of cases under Mitchell that are, I don't have an attorney types of cases. They're analyzed completely differently. Under the I have an attorney type of cases, we're asking questions like, well, what exact evidence didn't they get in? And what could he have done had he had, you know, this and that? Under the, under the set of cases after Mitchell, I'll give you an example here that we have in our, our brief. Um, let's see what's the, what's the most obvious one. Um, so, we, we got, I think we have a, we have a Geharaman in our, in our brief. In that case, what this court required showing was just that the, the, um, person was unable to understand. Not what specific evidence did they get in or they could not get in. What if they had prepped or they hadn't prepped? That wasn't the standard. And isn't that a judgment that can be made by the district judge who's got, got your client in front of him? We don't have your client in front of us. You've got a district judge who, who has seen your client and, uh, understand something about him and has made a, has made a judgment about that. Do we owe the district judge some deference on that point? I don't believe so, Your Honor. Not as to make that judgment on a cold record that your client is unable to defend himself. I believe you can do that, Your Honor, under the, not under the analysis of clear error on the facts. I think this case falls clearly under the, under the law. I think it should be clear from the law, from the case law, even in this circuit, that if someone is not provided with an attorney under those circumstances, it doesn't matter what the judge knew or didn't know, especially if they've got medical testimony in front of them. As a matter of law, I think that should be the standard. If you've got this kind of situation, that should just be an abuse of discretion. I see my time's about up. I'll just touch really briefly on one other case that goes to that for Your Honor's consideration. Um, so even at United States versus Greenwich, 675 F 2nd 1126, that's another case where clearly failure to appoint counsel, um, is just reversible error. And that's where I think the standard should be. Thank you. You're out of time, but we'll give you two extra minutes for rebuttal. I'm sorry, Your Honor? You're out of time, but we'll give you two extra minutes for rebuttal. Yes. Good morning. Excuse me. Good morning, and may it please the court. My name is Jean Sinnott, and I'm here on behalf of the Pelley's. I won't go through all of the different arguments in this case. I do want to focus on what judges have brought up here, and that is prejudice. Appellant has been unable to articulate either to the BAP or to this court what specific evidence he was unable to get admitted that caused him prejudice. I'm very concerned. I was at the 15-day trial, the only lawyer sitting here who was there, and there have been some misstatements in the record and some omissions that this court needs to be aware of. Valuation expert, valuation expert was at trial. He was entitled to present his valuation expert. The motion in limine to exclude that expert was against, was only related to Ms. Deeks, but my client, Mr. Welch, got added later, and so the case scheduling order didn't apply to him. Therefore, Mr. Cattell was able to call that witness. The witness even provided a rebuttal report to my valuation expert witness. So the BAP's opinion assumed that he never called this expert because the record provided was incomplete, the appellate record, and it still is. And so we put in our supplemental excerpt of record a full listing of all the exhibits that were entered in this case, and plaintiff entered hundreds of exhibits. He was able to call his expert witnesses. The appellant's counsel has not pointed to any evidence or witness that should have been called that wasn't. I guess the one difference here is a lot of these cases involving prejudice, the evidence is overwhelming, so it makes it very easy for the court to say no prejudice because the evidence was so overwhelming, doesn't matter, he could have the world's greatest lawyer, he or she would have lost. Here, looking at the record, I have no idea who should have won. I mean, I don't know, maybe the bank's job was right, maybe not, I don't know. So in that way, we have some case law saying the type of presentation that a party is able to do makes, potentially makes a difference here. And here, he wasn't able to present Ms. Deeks as, in his case in chief, he had to cross-examine her. Would that have made a difference, possibly, in this case? You know, when I was preparing for this hearing, I was going through all of these records again, and it reminded me that the facts dictate the outcome of a case. It's, you could have the best lawyer in the world, but if you have bad facts, you're not going to win. And what matters here is whether the facts got into the record. And one of the hardest jobs of a trial lawyer is getting facts into the record. You have to deal with rules of evidence, you have to deal with facts. In this case, there were very few objections. The judge bent over backwards to accommodate Mr. Cattell. The lawyers were, did not object to nearly all of his exhibits. He was provided days upon days upon days of tedious testimony. He was permitted to submit all of the was that the facts did not result in him winning. So the one thing that's, not the one thing, but one of the things that is puzzling about this case is you mentioned the judge bent over backwards for Mr. Cattell. That may be true at the hearing, but not at the time of the motion for continuance. And so I'm sort of like searching in the record for what was the motivator for why the judge took a very hard line and was like, no, we're going to trial, even though you don't have a lawyer. Can you explain that? Well, I can't, I don't, I wasn't in the mind of Judge Hersher, but I can tell you I was there for the proceedings. And I think what happened was Mr. Cattell had an attorney. He withdrew in July of 2021. There's been some discussion about he was forced to withdraw. No, he was terminated. And Mr. Cattell also had bankruptcy counsel, very competent bankruptcy counsel, who actually handled the summary judgment hearing and won. That occurred after his trial lawyer withdrew months later. So we get to the eve of trial, we have multiple parties, we have years of litigation, not only in the bankruptcy court, in the lower courts. Ms. Deeks is the former romantic partner of Mr. Cattell. She's been dealing with this for years. My husband is a real estate, who got dragged into this dispute. And you get on the eve of trial, and he's saying, oh, no, I need more time to get a lawyer. Well, he had a lawyer. The lawyer filed a limited appearance to get the continuance. But he had only asked, he said that he only spoke with four different lawyers. Mr. London has said earlier in his opening, oh, you know, there were 600 docket entries, this and that. Nothing in the record provides anything about what any of the other lawyers said or did. That's not in the record. But here, this wasn't just an open ended request of give me more time to find a lawyer. Mr. London came in and said, this trial set for December, give me two months, and I'm prepared to take this case to trial. So the judge could have just said, all right, let's wait two months. And you look at these four Flint factors, and I think three of the four really actually, I think, favor Mr. Cattell. The prejudice is the close call one. And if you're supposed to look at this, I don't agree with your friend's argument that somehow not having a counsel is per se prejudice. But for this multi-factor test, even if prejudice is minimal, but all these three other factors seem to favor Mr. Cattell here. I mean, it just doesn't seem to make any sense when an original lawyer has to resign because of malpractice, basically. And he tries to find some lawyers. It's bankruptcy. And again, this is a bankruptcy case. This isn't the easy case where a pro se lawyer can do this, really, in a good way. And he comes up with a lawyer, and the lawyer says, give me two months, because I need to prepare for this. I have other obligations. And I can then try this case. Why not continue with that? It makes no sense to me. Well, It seems like an abuse of discretion. I mean, it's Let me, let me correct one thing. This wasn't a complicated bankruptcy case. This was a case, it was an adversary proceeding in bankruptcy court. But the reason why it was even there is that Mr. Cattell, essentially forged I mean, there are a lot of facts. I mean, there are a lot of facts, a lot of documents, disputed facts. It's not a simple case of, it's a theft case, I didn't do it. I mean, compared to a lot of some other pro se cases. It's a pretty complex case for a pro se person to present. Well, I mean, he had litigated the case in Deschutes County and lost. And then he filed bankruptcy and removed the case. But I'm just going to the, I mean, what basis? I mean, I'm trying to understand what rationale of the bankruptcy court not to continue for two months. It's the holiday season anyway, it's in December, it's Christmas time. I mean, just delay it two months, and they'll have a lawyer. Your Honor, I will tell you, it was, it, hindsight is probably 2020. But sitting in It's obvious. I mean, it's not even hindsight. I mean, it's just, this isn't the open ended, this isn't a open ended, give me more time. It's I have a lawyer, the lawyer comes to the judge and says, I can try this case in two months, give me time so I can learn the facts. And I have other obligations. I mean, why, why say no, it makes no sense. I know no one's offered explanation for the judge's decision. Well, the court, the court did review the factors of 2.61 acres, diligence, and we've discussed that he, he determined that Mr. Cattell was not diligent. So that was one factor. He got a lawyer that that to me. So he got the lawyer. But that's, I think we need to be careful with that. Because Mr. London filed a limited appearance, and there was no commitment that he was absolutely going to represent him. I mean, he just said, give me two months, I can't do it. Give me until February, preferably March, but February, I can do the case, I'll have time, I can do it. Well, and then the inconvenience, can you go to the inconvenience factor? I mean, that seems, what was the major inconvenience here? So the convenience was, Ms. Deeks is a nurse, and she had to arrange her work schedule. She lived out of the city, you know, she lives in Bend, so had to travel up. We had all of our expert witnesses lined up. We had people, you know, who needed to take time off work. The judge found that, I thought this was a remote proceeding. Was there travel? I'm sorry. Was there travel if this was a remote proceeding? And, yeah, you're right. So that doesn't matter. The judge's rationale is in his opinion. He did go through all four of the factors. I do think this court really needs to focus on the prejudice factor and look at what has not been said here today, which is what evidence or facts would have changed the outcome? What evidence would have changed the outcome? I guess his point is the presentation. So, for example, if you were able to present the main witness, Ms. Deeks, in this case in chief, you would have been able to present evidence in a more effective way than in a cross. I mean, that's, you know, that's one of the strategies, obviously, that trial lawyers engage in and how you, whether you present a witness in cross and chief or you have to cross-examine them. Yeah, but a lot of this, excuse me, a lot of this case was based on documentary evidence. I mean, that was the crux of it. Who owned the property? That was, I mean, that was one of the most important parts of it, because he was seeking to avoid the transfer of property. And the court found he did not have standing to do so. And that was based on deed. I mean, that was a deed or is the transfer provision of the bankruptcy code. It's only property of the debtor can be, the transfer of property of the debtor can be set aside. You don't need to present that evidence in any other way than to just say, here's a deed. I mean, the deed was in the record. So, you know, you could be the worst lawyer in the world and still win if you were actually the owner, the debtor owned it, but he didn't. And that's the same for the Oregon partnership statute. The partnership, so Ms. Deeks, the court did find that they had a partnership, but Ms. Deeks was the title owner. As such, she was empowered or she was able to transfer title of that property. And my client, Mr. Welch, was entitled to rely on that. And there was no, the only, the only entity that would have standing to set that aside would be the partnership. The partnership was not the plaintiff. So that's just, I mean, there's no presentation of evidence that's going to change how that outcome, what the outcome is for that, for those claims. It's documentary evidence. The court never even considered valuation because it didn't get to whether there was reasonably equivalent value because it didn't think it needed to. So that, I mean, there was expert witnesses. Whether Mr. Cattell could, you know, examine his witness in an effective manner didn't even come into play in the court's decision. It, because it wasn't even considered. Mr. Cattell was able to call his doctor as a witness and put on evidence of his, whether he was a vulnerable person. And, you know, the court didn't agree with that. And that was based on Mr. Cattell's testimony and documentary evidence showing his familiarity with QuickBooks. He had bought and sold companies. He had developed property. He had developed property. There were, you know, Judge Herscher, as we've said in our brief, there's really no replacement for you all to look at what this judge, you know, sitting there for 15 days. I was there for 15 days. Mr. Cattell was able to put on his case. He was able to present all of the facts of his case. There were not complicated legal issue arguments. There just weren't. And the court, as the fact finder, is entitled to, I mean, you could only reverse that if there was clear error. And there really is, I mean, there's not. If you look at the supplemental excerpt of record, just review all of those exhibits that were admitted. And So the motion to continue. Oh, I guess one other thing is this trial went on over the course of months. So we would have a few days and then we would break for weeks. Which again, then goes to why didn't he continue it? And to me, it's one of these things, you know, I'm sure you feel the same way I felt the same way when I was in private practice. You know, the worst thing is, you know, you may disagree with the judge, but it is what it is. But if the judge just acts in a tyrannical way, no reason, almost might makes right, just not going to give a reason, just acts that way. It's frustrating. You can disagree with reasoning. And here I just don't see why the judge just didn't continue this. I guess my point, though, in saying that was there were large breaks in the trial. So, I mean, he could have gone back to Mr. London and said, look, here's what's going on. Can you now come in? We have, you know, a two week break. This is what's going on, you know, and he didn't do that. And I wouldn't say Judge Hersher has ever been tyrannical. I mean, yeah, I don't know. I'm looking at the record of I just don't see any why that wasn't, you know, why isn't that an abuse of discretion? If you can show a little bit of prejudice, and we have to consider four factors, if you can show a little bit of prejudice, given all these other factors, no one seems to have come to a reason why it didn't make any sense, judicial management. Sometimes judges do that because they want to force a settlement. But usually you have two lawyers, so they can, you know, work a settlement. So judges do that all the time to force a settlement. But when one side doesn't have a lawyer and just acts this way, and there's no reason not to continue it. Well, I guess, again, you know, not to repeat myself, but his reasons were set forth in his ruling. And he went through the four factors. And in his judgment, he found that it was... Because when he continued it, he doesn't really know the prejudice factors, right? I mean, at that point, before the trial. So that, to me, is one of these things he won't know. And when we review, we look at prejudice after the fact. But before the trial, he won't really know the prejudice. And he seems to suggest you will be kind of prejudiced because of you don't have a lawyer. So you look at those three factors and all those three factors. Well, again, I just, there really wasn't prejudice because he was, as I've said, all of his, you know, his, he was able to present all the facts that he needed to for his claims. So, you know, even if we went back and redid this, and he had a great lawyer, the facts don't change. And those facts were in the record. So I think I'm over time. So... Great. Thank you. Unless you have any. Thank you. Your Honors, I just want to address one or two things. I think what's important, that we didn't say before, is that prejudice is just one of those factors. But it's a mandatory factor. And it's not dispositive. I think it's what's, none of the particular factors are dispositive. And I will mention that... You have to show prejudice, though. You have to show prejudice. But I will mention that, and I didn't say it before, my understanding is that on that factor, what the judge did was say, I assume that there will be prejudice because he doesn't have a lawyer. Stop. He didn't say how much prejudice, a little bit, a lot, how it weighed. He didn't really weigh the factors in his analysis. It's, there's not a lot of detailed findings on it. But it is important to say that at least the judge, in his determination, said, I assume there will be prejudice. How much? When we look at after the fact, we have to look at the prejudice, though. After the fact, seeing what happened. Exactly. But even in his ruling, he said, I assume there's prejudice. So I think that's important. So wouldn't the question of prejudice, because it has to be determined after the determination on the continuance has been made, wouldn't that be more relevant to the question of granting a new trial after you've seen the trial that you got? I don't know, Your Honor, that I agree that you can't foresee the prejudice. Well, you might be able to anticipate some prejudice, but then that's, again, this is a judgment by the judge who's got the people in front of him at that moment. He can see your client. He can see how competent he is. He can see what he's done, what he hasn't done, and make some assessment as to how he's going to be able to handle the case. He also has to make some assessment as to how complex the case is. Again, but the prejudice, he really isn't going to be able to assess that. It's a prediction. But at the end of the trial, you now know whether there has been prejudice. Well, that would go then to the question as to whether he should have granted a new trial because he thought that your client had been prejudiced. What I would say, Your Honor, is all he needed to do was find some prejudice, look at 2.61 acres, focus on usefulness, which he did not do, and that's an abuse of discretion every day of the week. Thank you, Your Honor. Great. Thank you both for the helpful argument. The case has been submitted and we are adjourned for the day.
judges: BYBEE, LEE, FORREST